2003 ME 135

**Royce CARROLL et al.**

v.

**TOWN OF ROCKPORT et al.**

Supreme Judicial Court of Maine.

Argued: Sept. 29, 2003.
Decided: Nov. 26, 2003.

David J. Perkins, Esq. (orally), Perkins Olson, P.A., Portland, for plaintiffs.

Amy K. Tchao, Esq., William L. Plouffe, Esq., Drummond Woodsom & MacMahon, Portland, for Town of Rockport.

Clifford H. Goodall, Esq. (orally), Thomas B. Federle, Esq., Mary A. Dennison, Esq., Dyer Goodall and Federle, LLC, Augusta, for Land & Holly Limoges.

Panel: SAUFLEY, C.J., and RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] Royce Carroll and Cindy Salo (Carroll) appeal from a judgment of the Superior Court (Knox County, *Atwood, J.*) affirming a vote of the Town of Rockport Board of Appeals to approve a revised plan for the Mount Pleasant Subdivision. Carroll contends that the Superior Court erred when it determined that (1) Carroll's appeal was filed too late to preserve a challenge to a Board vote approving a waiver of a 1000–foot dead-end road length limitation; (2) the Board properly approved revised plans with changed road lengths after initially rejecting a plan with longer road lengths; and (3) the Board's approach to decision-making had not improperly shifted the burden of proof to the opponents of the subdivision. Because the Board failed to make the findings of fact required by the Town of Rockport Ordinances and state law, we vacate and remand for further proceedings.

## I. CASE HISTORY

[¶ 2] Lance and Holly Limoges own a 46–acre parcel of land in the Town of Rockport. On this land they constructed a home and a private road approximately 1600 feet in length. Royce Carroll owns land abutting the Limogeses' land. Cindy Salo is the personal representative of an estate which owns land within the immediate vicinity of the Limogeses' land.

[¶ 3] In December 1999, the Limogeses submitted an application for approval of a thirteen-lot subdivision to the Rockport Planning Board. Carroll, Salo, and others objected to the subdivision plans and participated in the administrative proceedings before the Planning Board and subsequent proceedings before the Board of Appeals. Many issues were raised and addressed in the course of consideration of the subdivision by the Planning Board and the Board of Appeals. However, for purposes of this appeal, we address in detail only two aspects of the broader subdivision plan—the length and grade of the road.

[¶ 4] The Limogeses' initial subdivision plan included a proposal for a dead-end road, 3477 feet in length, to provide access to the thirteen lots in the subdivision. Section VI(A)(3)(c) of the Rockport Subdivision Ordinance states, "Dead-end streets shall not exceed 1000 feet in length, from centerline of the feeder street to center of turnaround, and shall be provided with a turnaround having a minimum outside radius of 65 feet."

[¶ 5] The proposed subdivision is located on the side of a hill, and the original plan contemplated a road with an approximate twelve percent grade. The Rockport Subdivision Ordinance provides that grades of roadways serving three or more homes may not exceed eight percent except, with approval of the Planning Board, a paved section of a private way may have a maximum grade of ten percent. Rockport Subdivision Ordinance § VI(A)(3)(a)(*). The Rockport Land Use Ordinance incorporates by reference the street design and construction standards of the Subdivision Ordinance. Rockport Land Use Ordinance § 803.1.6.

[¶ 6] Section IX(A) of the Subdivision Ordinance grants the Planning Board discretion to waive requirements of the Subdivision Ordinance when it "finds that ex-

traordinary and unnecessary hardships may result from strict compliance with these standards *or* where there are special circumstances of a particular plan ...." (Emphasis added.)

[¶ 7] The Limogeses requested a waiver from the Planning Board of the road length and grade requirements of the Rockport ordinances. Initially, the Planning Board denied the request for a waiver. The Limogeses then requested findings of fact and, at the same time, presented a revised plan to the Planning Board. With the revised plan, the Limogeses presented a new waiver request, addressing only road length. They asserted that the grade issues were resolved by the plan revisions. In their road length waiver request, the Limogeses asserted that other subdivisions had steeper grades and longer dead-end roads than their proposed subdivision. After reviewing the revised plan, the Planning Board waived the 1000–foot dead-end street limitation. However, after several subsequent meetings, the Planning Board denied the Limogeses' request for subdivision approval. The Limogeses requested reconsideration, asserting that one of the planning board members had a conflict of interest. The Planning Board denied the motion for reconsideration.

[¶ 8] On August 10, 2000, the Limogeses appealed the Planning Board's denial of their subdivision application to the Board of Appeals. In their appeal document, the Limogeses requested that the Board of Appeals:

[R]eview and reverse the planning board's decision of July 12, 2000 and August 9, 2000, concerning the conflict of interest of one of the members, that member's request to withdraw his vote, and the vote of the two members who

voted against the final subdivision approval for the reasons that were irrelevant for final approval and that had been approved on May 16, 2000.

[¶ 9] As it was authorized to do,[1] the Board of Appeals reviewed de novo the Planning Board's denial of the Limogeses' subdivision application. The Board of Appeals conducted many meetings and hearings addressing the subdivision. Most of the deliberations focused on the question of whether the proposed subdivision should receive a waiver from the 1000–foot dead-end road length limit. More general concerns were raised regarding public safety and the impact that subdivision approval would have on abutting, active blueberry fields. On July 11, 2001, the Board of Appeals voted to deny the Limogeses' request for a waiver of the dead-end road length limit. The Board issued no findings regarding the denial of the waiver request and did not issue any written decision other than what appears in the minutes of the Board meeting.

[¶ 10] Following the Board of Appeals action on the waiver, the Limogeses indicated that they would file a new subdivision plan for review by the Board of Appeals. Carroll objected, arguing that any new plan would be a new subdivision application that should be referred to the Planning Board for review. The Limogeses then submitted, and the Board of Appeals proceeded to consider, two new plans. Each was essentially the same as the prior subdivision plan except that the subdivision was reduced to eleven lots. In one alternative plan, road length was reduced to 3038 feet and in the other alternative road length was reduced to 2959 feet.

[¶ 11] On October 3 and November 7, 2001, the Board voted to waive the 1000–foot dead-end road limit and approve the

---

1. *See* Rockport Land Use Ordinance §§ 703 and 706.

private way option with the 2959–foot road length. In other meetings, the Board addressed other criteria stated in the Subdivision Ordinance and in 30–A M.R.S.A. § 4404 (1996 & Supp.2002). During the course of this consideration, the Limogeses submitted further modifications to their plan on or about December 4, 2001. At its meeting on December 19, 2001, the Board of Appeals approved the modified subdivision plan. At that same meeting, the Board signed the private way plan.

[¶ 12] The Board of Appeals issued a document entitled "Mount Pleasant Findings of Fact" on December 26, 2001. The portion of the document entitled "Findings and Criteria" is not a written decision or findings of fact. Instead, it appears to be the compiled minutes of Board meetings. In the document, various motions made at the Board meetings are stated. After the motion is stated, the votes of the individual Board members are indicated along with paraphrasing, by the Board secretary, of some Board members' statements of the reasons for their vote on the particular motion.

[¶ 13] For example, a portion of the December 26, 2001 document addressing the road length waiver reads as follows:

This Board considered the following State Criterion No. 9 at the June 20, 2001, June 26, 2001 and July 11, 2001 meetings: *"Conformity with Local Ordinances and Plans—The proposed subdivision conforms with a duly adopted Subdivision regulation or ordinance, comprehensive plan, development plan or land use plan, if any."*

The controversy presented by this motion is the issue of the road length waiver. After hours of discussion and debate Geoffrey Parker made the following motion which was seconded by Donald Isikoff: *"To find the project on plan prepared by Coffin Engineering is in conformity with all ordinances except for the length of the road, and to grant the applicant a waiver to allow the full length of the road applied for with the additional condition that the road is a private road and will be maintained by the developer".* This motion was defeated by vote of 3–2, as follows:

Donald Isikoff—No: Recognizing that the Board will be addressing the rest of the issues and open to the possibility of revisiting the question of road length in the course of that review.

Alan Kumble—No.

R.J. Masiello—Yes.

Geoffrey Parker—No.

Victor Steinglass—Yes: Per page 22 of the Subdivision Ordinance, in his opinion it is appropriate to this private way to have this waiver.

The Chairman advised that Board will continue to review: Pollution, Erosion, Ground water and Stormwater.

At the October 3, 2001 meeting this Board again considered the issue of the road length waiver when the applicant presented a new road design called Option 2 (see Subdivision Ordinance Section VI(3)(f)). Donald Isikoff made the following motion which was seconded by Geoffrey Parker: *"To accept road design Option 2 at 2,959 feet in length for the Limoges Subdivision,"* and this motion was amended to include the condition that the subdivision road shall always remain private. The amended motion to allow the waiver of the road length was passed by a 3–2 vote, as follows:

Donald Isikoff—No: Based on his statements in the record.

Alan Kumble—Yes.

Geoffrey Parker—No.

R.J. Masiello—Yes.

Victor Steinglass—Yes: Objective testimony has been received that does not provide any reason to question whether the road length is inappropriate and that has indicated that the road is safe.

At the same October 3, 2001 meeting Geoffrey Parker made the following motion which was seconded by R.J. Masiello: *"To find the proposed Limoges subdivision, with Option 2 revision, in conformity with all ordinances and plans as described in No. 9 of the review criteria, with the previously passed road waiver."* This motion passed by a 3–2 vote, as follows:

Geoffrey Parker—No: Having taken this issue very seriously and agonized over the decision, he has ultimately had a difficult time coming to the conclusion of finding the project conforms with local ordinances and Comprehensive Plan.

Donald Isikoff—No: This project still conflicts with the Purpose section of the Comprehensive Plan.

R.J. Masiello—Yes: Based upon information available:

Alan Kumble—Yes: Board members have read similar things and come to different conclusions. An important point of Section 908–1–Purpose is balancing other issues against unlimited development. He would rather this project did not happen, but equity must play a role and he cannot see any legal reason not to approve it.

Victor Steinglass—Yes: He agreed that the limited development is a moving target, but feels the project meets the essence and intent of limited development and does comply with Comprehensive Plan, Land Use Ordinance and Subdivision Ordinance.

The total "Findings and Criteria" covers nine pages.

[¶ 14] Carroll's appeal to Superior Court, pursuant to M.R. Civ. P. 80B, was filed on January 14, 2002. The Superior Court, after a hearing, dismissed, as untimely, the portion of Carroll's appeal relating to approval of the private way permit. The Superior Court reasoned that Carroll's appeal was untimely, as the private way permit had been approved by the oral vote of November 7, 2001. In all other respects, the Superior Court affirmed the Board of Appeals approval of the subdivision. Carroll then brought this appeal.

[¶ 15] Carroll contends that the July 11, 2001, vote of the Board of Appeals, denying the waiver of the road length requirement, was a final decision on that issue and, consequently, on the application for approval of the subdivision. From that point, Carroll argues, any revised subdivision plan should have first been presented to the Planning Board, as the agency of original jurisdiction. The Limogeses assert that the November 7, 2001, vote approving the waiver of the 1000–foot limitation for their revised plan is a final decision of the Board of Appeals which Carroll was required to appeal within forty-five days pursuant to 30–A M.R.S.A. § 2691(3)(a) (1996).[2] The Limogeses also contend that the December 26, 2001 "Findings of Fact" is a sufficient recordation of the December 19, 2001, actions of

---

**2.** As a time limit "specified by statute" the forty-five-day time limit for bringing M.R. Civ. P. 80B appeals from decisions of local boards of appeal is an exception to the usual thirty-day limit for filing appeals specified in M.R. Civ. P. 80B(b). Notably, the Rockport Land Use Ordinance specifies two time limits for bringing appeals from Board of Appeals decisions. Section 702.7 sets a forty-five-day from "date of the vote" limit as specified in 30–A M.R.S.A. § 2691(3)(G). Section 705.4 specifies a "30 days after the decision" limit, citing 30 M.R.S.A. § 2411 which was repealed by P.L.1987, ch. 737, § A, 1 (effective February 28, 1989).

the Board of Appeals to constitute a final written decision, including the fact-findings required by both the Rockport Land Use Ordinance and state law.

## II. LEGAL ANALYSIS

### A. Finality of Board Actions

[¶ 16] Absent special and narrow exceptions, appeals may only be considered from final judgments, or final rulings of administrative agencies. *See Rockland Plaza Realty Corp. v. City of Rockland*, 2001 ME 81, ¶ 6, 772 A.2d 256, 258; *Lakes Environmental Ass'n v. Town of Naples*, 486 A.2d 91, 95–96 (Me.1984). A final judgment or final administrative action is a decision that fully decides and disposes of the entire matter pending before the court or administrative agency, leaving no questions for the future consideration and judgment of the court or administrative agency. *See In Re Adoption of Matthew R.*, 2000 ME 86, ¶ 5, 750 A.2d 1262, 1264; *Mechanic Falls Water Co. v. Public Utilities Comm'n*, 381 A.2d 1080, 1087 (Me. 1977); *Hazzard v. Westview Golf Club, Inc.*, 217 A.2d 217, 222 (Me.1966); *accord Musson v. Godley*, 1999 ME 193, ¶ 5, 742 A.2d 479, 481.

[¶ 17] Findings of fact and conclusions of law reached by an administrative agency in the course of its deliberations, but prior to issuance of a final decision, are not final administrative actions. Although the administrative decision-making may have indicated what action the administrative agency might take with respect to a particular issue, such decisions are not sufficient to transform the fact-findings or legal conclusions into a final order or judgment. *Mechanic Falls Water Co.*, 381 A.2d at 1087.

[¶ 18] As this case demonstrates, with several preliminary administrative decisions approving and disapproving the waiver of the 1000–foot limit, no local decision-making process can be considered over until it is over. Boards of Appeals, like other decision-making bodies, are subject to change of mind and change of membership which can sometimes lead to change of result between preliminary and final decision-making. *See Sawyer Environmental Recovery Facilities, Inc. v. Town of Hampden*, 2000 ME 179, ¶¶ 8–11, 760 A.2d 257, 259–60 (noting the Town's change of position during consideration of a land use application).

[¶ 19] Votes or decisions addressing individual issues during the course of consideration of an application that requires rulings or fact-findings on several points are not final decisions. A person is not required to file an appeal to protect a challenge to each particular decision, prior to issuance of a final decision on the overall application.

[¶ 20] Neither the July 11, 2001, vote against waiving the 1000–foot limit nor the October 3, 2001, or November 7, 2001, votes for waiving the 1000–foot limit were final decisions. There is no rule of law that requires that a first, or third, or fifth decision on a particular issue be the final decision where, as here, an agency has authority to consider an application de novo and to allow amendments of an application during the course of its consideration. At some point, excessively long, repeated, and inconsistent consideration of an issue, without a final result, may become a due process concern, but no such issue is presented here.

[¶ 21] After the Board of Appeals' July 11, 2001, vote rejecting the waiver, the Limogeses were not required to cease participation before the Board of Appeals and file any amended plans as new proceedings

before the Planning Board.[3] Likewise, after the November 7, 2001, vote approving the waiver, Carroll was not required to file an appeal within thirty or forty-five days or waive the right to challenge approval of the waiver. The vote of November 7 was not confirmed until the final approval of the subdivision on December 19 and adoption of the purported findings of fact on December 26, 2001.

[¶ 22] The Limogeses assert that our decision in *Vachon v. Town of Kennebunk*, 499 A.2d 140 (Me.1985), and the statutes governing appeals from the Board of Appeals specify that the time for appeal began to run from the vote on November 7 and not from issuance of the decision. The Limogeses' argument is unclear as to why the time for appeal should begin to run from the November 7 vote instead of the July 11 vote, the October 3 vote, or any of the other preliminary votes that were taken in the course of consideration of their subdivision application. Focusing on November 7, 2001, they point to the language of *Vachon* which states that the appeal period "should start to run immediately when the Board took its final public action, both because that time is easily determined and precisely fixed and because all parties to the public proceeding will ordinarily know of the Board's public vote at the time it is taken." *Id.* at 142. In *Vachon*, our reference to the "final public action" addressed the final approval or disapproval of an application when a board casts its public vote. *Id.* Here, that final approval or disapproval occurred with the December 19 vote, confirmed by the December 26 issuance of the purported findings of fact.

[¶ 23] State law governing appeals from boards of appeals, 30–A M.R.S.A § 2691(3)(G) (1996), is consistent with this interpretation. Subparagraph 3(G) states: "Any party may take an appeal, within 45 days of the date of the vote on the original decision, to Superior Court from any order, relief or denial in accordance with the Maine Rules of Civil Procedure, Rule 80B." We will not infer that the Legislature intended an illogical or absurd result in a statute it enacted. *Brent Leasing Co. v. State Tax Assessor*, 2001 ME 90, ¶ 6, 773 A.2d 457, 459. The "date of the vote on the original decision" necessarily means the vote finally approving or disapproving an appeal or an application, not any of the many preliminary votes that may be taken in the course of consideration of an appeal or an application.

[¶ 24] Because Carroll's appeal was filed within forty-five days of the date of the final vote on the administrative appeal, the Superior Court erred in dismissing Carroll's appeal of the Board of Appeals approval of the waiver of the 1000–foot limit.

## B. Sufficiency of the Board of Appeals Decision

[¶ 25] The Rockport Land Use Ordinance authorizes the Board of Appeals to consider requests to waive specific requirements of land use laws or ordinances in proceedings to approve a special exception (Rockport Land Use Ordinance § 703.3) or a variance (Rockport Land Use Ordinance § 703.4). The Rockport Subdivision Ordinance authorizes the Planning Board to waive specific requirements of that ordinance after making certain findings. Rockport Subdivision Ordinance § IX. It is unclear from the record which of these provisions the Board of Appeals applied in its consideration of the Limogeses' request

---

**3.** When an applicant presents an entirely new plan, rather than adjusting a pending proposal to address Board of Appeals' concerns, the new plan should be presented to the Planning Board.

to waive the road length limitation. The special exception, variance, and waiver provisions each require an applicant to meet certain listed criteria to qualify for a special exception, a variance, or a waiver. The burden is on the applicant to establish that the criteria for a special exception, variance, or waiver are met. Rockport Subdivision Ordinance § V, Rockport Land Use Ordinance §§ 703.3, 703.4. *See also Lewis v. Town of Rockport*, 1998 ME 144, ¶ 15, 712 A.2d 1047, 1050 (burden of proving compliance with an ordinance is on the applicant).

[¶ 26] In decisions resulting from any of these proceedings, specific findings are required. Thus, 30-A M.R.S.A. § 2691(3)(E) (1996) specifies that decisions by local boards of appeal "must include a statement of findings and conclusions, as well as the reasons or basis for the findings and conclusions, upon all the material issues of fact, law or discretion presented ...." Separately, Maine's Freedom of Access law specifies that, when any local agency conditionally approves or denies any permit, the agency shall make a written record of the decision and "shall set forth in the record the reason or reasons for its decision and make finding of the fact [*sic*], in writing, sufficient to apprise the applicant and any interested member of the public of the basis for the decision." 1 M.R.S.A. § 407(1) (1989). Because the Limogeses' application was approved with conditions, specific findings were required by both statutes.

[¶ 27] When administrative agencies are required to make findings of fact to support a decision, the findings must be adequate to indicate the basis for the decision and to allow meaningful judicial review. In *Chapel Road Associates v. Town of Wells*, 2001 ME 178, ¶ 10, 787 A.2d 137, 140, we observed:

Meaningful judicial review of an agency decision is not possible without findings of fact sufficient to apprise the court of the decision's basis. *Christian Fellowship & Renewal Ctr. v. Town of Limington*, 2001 ME 16, ¶¶ 10–15, 769 A.2d 834, 837–39. In the absence of such findings, a reviewing court cannot effectively determine if an agency's decision is supported by the evidence, and there is a danger of "judicial usurpation of administrative functions." *Id.* ¶ 15, 769 A.2d at 839 (quoting *Gashgai v. Bd. of Registration in Med.*, 390 A.2d 1080, 1085 (Me.1978)). Adequate findings also "assure more careful administrative considerations, help parties plan cases for rehearing or judicial review and ... keep agencies within their jurisdiction." *Id.* (quoting *Maine AFL–CIO v. Superintendent of Ins.*, 595 A.2d 424, 428 (Me. 1991)); *see also Harrington v. Inhabitants of Town of Kennebunk*, 459 A.2d 557, 561–62 (Me.1983) (remanding matter to agency in zoning context where findings were insufficient to allow judicial review).

[¶ 28] The requisite findings of fact may be stated in a written order or stated orally and then transcribed in a written order. However, an oral statement purporting to be findings of fact to support a decision must be sufficiently clear to be reviewable. Further, the findings, whether in writing or stated orally, must be a statement of the decision-maker's findings, not the views of individual members of the decision-making agency.

[¶ 29] In *Widewaters Stillwater Co. v. Bangor Area Citizens Organized for Responsible Development*, 2002 ME 27, ¶¶ 9–12, 790 A.2d 597, 600–01, we reviewed rejection of an application for development of a shopping center. The available written record included no specific written findings, only statements in the record by

individual board members reflecting their individual opinions as to why they were voting as they did on the particular question or questions presented. The individual statements did not represent any collective judgment of the fact-finding agency regarding the application. Accordingly, we vacated and remanded the agency decision for development of proper fact-findings upon which review could be based. *Id.*

[¶ 30] As we stated in *Christian Fellowship and Renewal Center v. Town of Limington,* 2001 ME 16, ¶¶ 14–18, 769 A.2d 834, 838–40, and as we repeated in *Widewaters,* 2002 ME 27, ¶ 12, 790 A.2d at 601, when an administrative board or agency fails to make sufficient and clear findings of fact and such findings are necessary for judicial review, we will remand the matter to the agency or board to make the findings.

[¶ 31] The Board of Appeals secretary's paraphrasing of the reasons given by some, but not all, of the Board members for their votes on various issues, including those relating to waiver of the 1000–foot dead-end road limitation, are not findings. These individual comments do not inform us of the findings which the Board of Appeals was required to make as part of its decision, nor do they inform us as to whether the review of the waiver of

the 1000–foot limit was conducted according to standards of review for a special exception, for a variance, or for a waiver. Further, the document purporting to be findings does not appear to address the issue of compliance with the maximum grade requirements specified in the Land Use Ordinance and the Subdivision Ordinance. Accordingly, we vacate the decision of the Superior Court and remand for determination of whether the application is being considered as a special exception, a variance, or a waiver. Once the status of that review is determined, the Board of Appeals should proceed to make findings that represent its collective judgment, addressing each factor that must be considered under the law that the Board is applying in reviewing the application.[4]

The entry is:

Judgment vacated. Remanded to the Superior Court for remand to the Board of Appeals of the Town of Rockport for further consideration in accordance with this opinion.

---

4. When a board vote is divided, only findings which reflect the majority vote need be stated as findings. *See Widewaters,* 2002 ME 27, ¶ 11, 790 A.2d at 601.