Majority: SAUFLEY, C.J., and MEAD, GORMAN, and HJELM, JJ.
Concurrence: SAUFLEY, C.J.
Dissent: SILVER and JABAR, JJ.
Dissent: ALEXANDER, J.
HJELM, J.
[¶ 1] Pisgah Mountain, LLC, appeals from a judgment of the Business and Consumer Docket (Portland, Horton, J.) vacating a decision of the Town of Clifton Planning Board that granted Pisgah a permit to construct and operate a wind energy project. After the Town’s Zoning Board of Appeals (ZBA) affirmed the Planning Board’s decision, the matter was appealed to the Superior Court by Peter and Julie Beckford, who own land adjacent to the proposed development site. Because the Beekfords did not file their appeal with the Superior Court within the time required by M.R. Civ. P. 80B(b) and 30-A M.R.S. § 2691 (2014), the court did not have jurisdiction over the matter. Consequently, we vacate the judgment.
I. BACKGROUND
[¶ 2] In late 2010, Pisgah applied to the Town of Clifton Planning Board for site plan approval to build and operate a five-turbine commercial wind energy project. The Planning Board held a series of public meetings and workshops about the application throughout the spring and summer of 2011. At several of the public meetings, the Beekfords voiced their opposition to the project, contending that Pisgah had not met the requirements of the Town of Clifton Land Use Ordinance.
*1126 [¶ 8] In October 2011, the Planning Board voted to approve Pisgah’s application and issued specific findings regarding the project’s compliance with all applicable provisions of the Ordinance. The Beck-fords timely appealed the Planning Board decision to the ZBA, and, after conducting a public hearing on the appeal, the ZBA remanded the matter to the Planning Board for further findings of fact. On January 25, 2012, following remand, the ZBA held another hearing on the application, where it considered the Beckfords’ arguments and the Planning Board’s further findings. At that hearing, the ZBA voted to adopt the Planning Board’s findings of fact and to reject each of the specific challenges that the Beckfords raised on appeal to the ZBA. The ZBA then voted separately to deny the appeal “in its entirety.” Following these votes, the ZBA decided that it would meet again on January 30 “for the Final Decision.”
[IF 4] When it reconvened on January 30, 2012, the ZBA approved the minutes of the January 25 meeting, which memorialized the votes noted above. The ZBA also voted “to accept the presented copy, as written, of the Notice of Final Decision made by the Appeals Board on the appeal from Julie and Peter Beckford.” The ZBA’s members each signed the written decision and findings of fact, which concluded, “the Board denies their appeal.”
[¶ 5] On March 15, 2012, the Beckfords filed a complaint pursuant to M.R. Civ! P. 80B in Superior Court (Penobscot County).[1] Pisgah and the Town moved to dismiss the Beckfords’ complaint on the ground that it was filed outside of the forty-five-day appeal period established in 30-A M.R.S. § 2691(3)(G) (2014). The court (Anderson, J.) denied the motion to dismiss, concluding that the statutory appeal period started on January 30 when the ZBA issued its written findings and decision, not on January 25 when it voted to deny the appeal.
[¶ 6] In May 2013, the court {Horton, J.) issued a decision remanding the case to the Planning Board for further findings of fact but retaining jurisdiction. After considering the additional findings of the Planning Board, the court entered a judgment on December 11, 2013, vacating the Board’s decision to approve the permit on the ground that the Town misapplied the requirements of the Land Use Ordinance. The Town and Pisgah timely filed an appeal of that decision pursuant to M.R. Civ. P. 80B(n) and M.RApp. P. 2, and the Beckfords cross-appealed.
II. DISCUSSION
[¶ 7] In addition to its arguments on the merits, Pisgah contends that the Superior Court lacked jurisdiction over the Beckfords’ appeal. Pisgah argues that the Beckfords’ Rule 80B appeal was untimely because the appeal period began with the ZBA’s January 25 vote. The Beckfords contend that the ZBA’s operative vote was on January 30 when it issued its written findings and that therefore their appeal was timely.
[¶ 8] The procedural mechanism governing the Beckfords’ appeal from the ZBA’s decision is M.R. Civ. P. 80B, which provides that “[t]he time within which review may be sought shall be as provided by statute....” M.R. Civ. P. 80B(b).[2] The *1127 applicable statute in this case is' 30-A M.R.S. § 2691, which governs municipal boards of appeals.[3] That statute provides: “Any party may take an appeal within 45 days of the date of the vote on the original decision....” 80-A M.R.S. § 2691(3)(G). The Beckfords filed their appeal forty-five days after the ZBA issued its written findings and decision on January 30, but fifty days after the ZBA voted to deny the appeal. Thus, the timeliness of the appeal hinges on whether the ZBA’s “vote on the original decision” occurred on January 25 or January 30.[4] If the appeal to the Superior Court was filed after the statutory deadline, then the court did not have jurisdiction to consider its merits. See Davric Maine Corp. v. Bangor Historic Track, Inc., 2000 ME 102, ¶ 11, 751 A.2d 1024 (stating that “[s]tatutory limitations on appeal periods are jurisdictional”).
[¶ 9] In order to determine whether the Superior Court had jurisdiction over the Beckfords’ appeal, we must answer two fundamental questions. First, does a vote by a board of appeals only trigger the appeal period for purposes of section 2691 once a written decision with findings of fact is issued? Second, regardless of when the written decision was issued, did the operative “vote” in this case occur on January 25 or on January 30? To answer these questions, we must construe section 2691, which we do de novo. See Carrier v. Secretary of State, 2012 ME 142, ¶ 12, 60 A.3d 1241. “We first look to the plain meaning of the statute,” and “look to legislative history and other extraneous aids in interpretation of the statute only if it is ambiguous.” Id. (quotation marks omitted).
A.
[¶ 10] We first consider whether, after voting on an appeal, a board of appeals also must issue written findings in order to trigger the appeal period pursuant to section 2691.
[¶ 11] The language of section 2691 is clear and unambiguous: the time period for filing an appeal runs from “the vote.” A vote is “the expression of one’s preference or opinion in a meeting or election by ballot, show of hands, or other type of communication.” Black’s Law Dictionary 1711 (9th ed. 2009); see also United States v. Cole, 41 F.3d 303, 308 (7th Cir.1994). Section 2691 does not include any language that directly or indirectly suggests that to be sufficient to invoke the appeal period, a vote must be accompanied by issuance of a written decision.
[¶ 12] In Carroll v. Town of Rockport, we held that, pursuant to section 2691, “The date of the vote on the original decision necessarily means the vote finally approving or disapproving an appeal or an application....” 2003 ME 135, ¶23, 837 A.2d 148 (quotation marks omitted). Accordingly, the appeal period in Carroll did not begin when written findings of fact were issued several days after the final vote on plan approval, but when the board *1128 of appeals voted on the permit application. See id. ¶ 22. This demonstrates that the issuance of written findings is an event that is distinct from the vote itself. See id. ¶ 23; see also Vachon v. Town of Kennebunk, 499 A.2d 140, 142 (Me.1985).
[¶ 13] This principle holds true even where a municipal ordinance requires a zoning board of appeals to issue a written decision, as it does here. See Clifton, Me. Land Use Ordinance, art. 17, § 6(E)(6) (2012). For example, in Vachon, a statute required the zoning board of appeals to issue a written statement of findings and conclusions and to send notice of the decision to the petitioner. 499 A.2d at 142. The statute at issue was an earlier version of section 2691, which provided that the time for an appeal begins when “the decision is rendered,” instead of upon “the vote on the original decision,” as the statute now provides. See 30 M.R.S.A. § 2411(3)(F) (1978). We held that “the decision [was] rendered” when the board of appeals voted at a public meeting to deny the petitioner’s permit application, not when written notice of the decision was later sent to the petitioner, even though the board of appeals was required to issue the written decision. Id.
[¶ 14] Similarly, in Woodward v. Town of Newfield, the town ordinance required the zoning board to issue findings of fact. 634 A.2d 1315, 1317 (Me.1993). Citing Va-chon, we rejected the argument that the appeal period began to run only when the written decision was issued. Id. Instead, we held that the appeal period “commences when the Board takes its public vote because that time is easily determined and precisely fixed and because all parties to the public proceeding will ordinarily know of the Board’s public vote at the time it is taken.” Id. (quotation marks omitted).[5] Thus, even when faced with the arguably more ambiguous language in the earlier version of section 2691, we have consistently held that the appeal period runs from the date of the vote, regardless of whether or when a written decision is issued.
[¶ 15] Although the Beckfords argue that it is useful for potential appellants to have a written decision and findings before they must decide whether to pursue an appeal, the plain language of section 2691 clearly states that the appeal period begins with the “vote,” and therefore we rejected that argument when it was made by the dissent in Woodward, 634 A.2d at 1318 (Clifford, J., dissenting). .Moreover, section 2691 requires that notice of a decision be mailed or delivered within seven days, which, coupled with the forty-five-day appeal period, provides sufficient time for an informed decision whether to appeal. See 30-A M.R.S. § 2691(3)(E).
[¶ 16] We therefore conclude that the appeal period established in section 2691 begins with the board of appeals’ final *1129 public vote, even when the board of appeals is required to issue a written decision and does so at a later date.
B.
[¶ 17] We next consider whether the ZBA vote that triggered the appeal period in this case was the one on January 25 or the one on January 30.
[¶ 18] In Carroll, we held that “the date of the vote on the original decision” in section 2691 “necessarily means the vote finally approving or disapproving an appeal. ...” 2003 ME 135, ¶ 23, 837 A.2d 148. Similarly, in Woodward, we held that the “appeal period commences when the Board takes its public vote,” 634 A.2d at 1317, and in Vachon, we held that the decision was “rendered” when the board of appeals “cast[s] its public vote” or “publicly makes its decision or announces it to the public.” 499 A.2d at-141. The January 25 vote meets all of those definitions: the ZBA took a public vote on each of the issués on appeal, it publicly made a decision finally disapproving the appeal, and it announced its decision at a public meeting.
[¶ 19] The scope of the issues on which the ZBA voted at the January 25 meeting ■also underscores the finality of the decision made there. The ZBA considered and rejected, point by point, each of the challenges raised by the Beckfords in their appeal. Then, after rejecting the Beck-fords’ individual contentions, the members of the ZBA unanimously denied the appeal “in its entirety,” thereby fully disposing of all the issues raised in the appeal. That vote was certainly not a vote on a discrete or preliminary matter that we have held to be insufficient to start the appeal period. See Carroll, 2003 ME 135, ¶¶ 19, 23, 837 A.2d 148 (holding that a vote to waive a zoning requirement before the application was finally approved was not the “vote on the original decision”). Rather, the ZBA fully disposed of all of the issues raised in the Beckfords’ appeal and then, in a comprehensive and unified way, denied the appeal, leaving only the task of issuing written findings as the Ordinance required.
[¶ 20] Although the ZBA stated on January 25 that it would meet on January 30 “for the Final Decision,” it did not say that it would meet for a final vote. The words “Final Decision” present a clear reference to the anticipated written decision. The decision had already been made on January 25 to comprehensively reject the Beckfords’ appeal “in its entirety,” and the only action that remained to be taken was the issuance of a written notice of the ZBA’s decision, which was required by law. When the ZBA voted on January 30, therefore, its members were voting to approve the text of a document memorializing the decision that had already been made. This action taken by the ZBA on January 30, however, does not take away from the statutory significance of the January 25 vote, which, as discussed above, was still the “vote on the original decision” pursuant to section 2691 because it was a public, final vote on the Beckfords’ appeal.
[¶ 21] It is to be fully expected that a vote within the meaning of section 2691 does not complete the board’s work on a matter. For the reasons discussed in section A supra, the vote that begins the appeal period pursuant to section 2691 need not be contemporaneously accompanied by the issuance of written findings. In fact, cases such as Vachon, Woodward, and Carroll demonstrate that a board of appeals may choose to delay issuance of written findings until sometime after it takes the “vote” that starts the appeal period for the purposes of section 2691. When a board of appeals defers issuance of a written decision to a date after it takes its vote on an appeal, as the ZBA did here, it is likely, if not inevitable, that it will then take another vote on the text of the *1130 written decision. That later vote cannot be treated as an event that renders the prior vote less than final for the purposes of section 2691 because that would equate the vote that starts the appeal period with the issuance of a written decision, which is directly contrary to our holdings in Va-chon, Woodward, and Carroll. This is confirmed by Woodward, where we held that the board of appeals’ vote was complete for purposes of section 2691 and triggered the appeal period, even though the board “contemplated further action; it had not yet determined wording of the decision and still had to write it in a ‘legal manner.’ ” 684 A.2d at 1318 (Clifford, J., dissenting).
[¶ 22] We therefore conclude that the forty-five-day appeal period commenced with the ZBA’s public vote on January 25 and that, consequently, the Beckfords’ Rule 80B appeal to the Superior Court was filed late. We note that, had the Beck-fords so moved, the Superior Court would have had the authority to allow an extension of the deadline for “good cause shown.” 30-A M.R.S. § 2691(3)(G). Even though Pisgah moved to dismiss the appeal as untimely, however, the Beckfords did not make such a motion.
[¶ 23] Because the appeal was not timely, the Beckfords failed to meet the jurisdictional requirements for judicial review of the Planning Board’s decision. See Vachon, 499 A.2d at 142.
The entry is:
Judgment vacated. Remanded to the Superior Court for entry of dismissal.

. The case was later transferred to the Business and Consumer Docket. See M,R. Civ. P. 131.

. Rule 80B(b) was subsequently amended to identify in greater detail the event that triggers the appeal period. See Amendments to the Maine Rules of Civil Procedure, 2014 Me. Rules 05 (effective September 1, 2014). The amended rule is inapplicable here, first, because the Beckfords filed their appeal to the Superior Court prior to the effective date of the amendment, and, second, because rule *1127 80B(b) continues to provide that the time to file an appeal is “as provided by statute,” which here is 30-A M.R.S. § 2691 (2014).

. The Town of Clifton Land Use Ordinance also contains a provision regarding appeals, which states that appeals may be made to the Superior Court "in accordance with state laws," specifically section 2691. Clifton, Me. Land Use Ordinance, art. 17, § 7 (2010).

. Because the legislative history of section 2691 suggests that "original decision” refers to a board of appeals' vote on an appeal as opposed to a later vote on a motion for reconsideration, see L.D. 1198 (115th Legis. 1991), we do not attach significance to the word "original” in determining whether the appeal period was triggered by the January 25 vote or the January 30 vote. Rather, for separate reasons set forth infra, we conclude that the appeal period began on January 25.

. The vitality of Woodward as it applies to cases governed by section 2691 is not called into question by our opinion in Gorham v. Androscoggin County, 2011 ME 63, 21 A.3d 115. The question presented there was whether Gorham’s appeal from a decision to terminate his public employment was timely pursuant to M.R. Civ. P. 80B(b)’s default appeal period because no relevant statute provided a deadline for filing an appeal. See id. ¶ 10. Therefore, our holding in that case that the appeal period began when the agency issued written findings has no application to section 2691, because section 2691 was not at issue and, beyond that, because section 2691 specifically identifies the "vote” as the event that starts the appeal period, not "notice” as is the case in Rule 80B. The holding in Gor-ham applies only to the question of when the appeal period began pursuant to M.R. Civ. P. 80B(b) prior to its amendment. See id. ¶ 19; see also supra n.2. Accordingly, our “disavowal” in Gorham of Woodward's dicta regarding notice pursuant to Rule 80B does not extend to the holding interpreting section 2691.