STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-17-34

MAD GOLD LLC,

        Plaintiff

v.

ORDER

SCHOOL ADMINISTRATIVE
DISTRICT # 51, et al.,

        Defendants

STATE OF MAINE
Cumberland ss Clerk's Office
FEB 02 2018  11:14AM
RECEIVED

Before the court are plaintiff Mad Gold LLC's motion for an extension in which to file Rule 80B complaint, Mad Gold's motion to specify the future course of proceedings, defendant Town of Cumberland's motion to dismiss, and defendant SAD 51's motion to dismiss.

The court will first address the motion for an extension and the motions to dismiss because, if no extension is granted or the complaint is otherwise dismissed, the motion to specify future proceedings will be moot.

Typically, for purposes of a motion to dismiss, the material allegations of the complaint must be taken as admitted, and the complaint must be read in the light most favorable to the plaintiff to determine if it sets forth elements of a cause of action or alleges facts that would entitle plaintiff to relief pursuant to some legal theory. *Ramsey v. Baxter Title Co.*, 2012 ME 113 ¶ 2, 54 A.3d 710; *Bisson v. Hannaford Bros. Co., Inc.*, 2006 ME 131 ¶ 2, 909 A.2d 1010.

In this case, however, one of the issues raised by the Town and by SAD 51 goes to whether Mad Gold's action is an untimely attempt to appeal a decision by the Town Planning Board. Defendants argue that if so, the court would lack subject matter jurisdiction. *E.g., Beckford v. Town of Clifton,* 2014 ME 156 ¶ 8, 107 A.3d 1124; *Davric Maine Corp. v. Bangor Historic Track, Inc.,* 2000 ME 102 ¶ 11, 751 A.2d 1024. On that issue, as opposed to a motion

under Rule 12(b)(6), the court does not draw any favorable inferences in favor of the complainant. *Davric Maine Corp v. Bangor Historic Track, Inc.,* 2000 ME 102 ¶ 6.

A second threshold issue is whether Mad Gold has standing to pursue an appeal of the Planning Board's June 20 approval if it was not a party at the proceeding before the Planning Board. *See Norris Family Associates LLC v. Phippsburg,* 2005 ME 102 ¶ 11, 879 A.2d 1007. This issue does not depend on the allegations in the complaint but is reviewed de novo by the court. *Id.*

Where a motion to dismiss challenges subject matter jurisdiction or standing, the court may consider material outside of the pleadings that is submitted by the parties. *Davric Maine Corp v. Bangor Historic Track, Inc.,* 2000 ME 102 ¶ 6; *Norris Family Associates LLC v. Phippsburg,* 2005 ME 102 ¶ 17 n.5. In this case the complaint refers to SAD 51's February 2017 application to the Cumberland Planning Board for an amendment to its 2007 site plan permit, to the approval issued by the Planning Board on June 20, 2017, and to a number of emails exchanged between representatives of SAD 51, Mad Gold, and Town officials. The Town's site plan ordinance, the relevant emails, and portions of the application and final approved plan are contained in submissions by the parties.[1]

## Allegations and Documentary Exhibits

The complaint alleges that SAD 51 received site plan approval in 2007 for an expansion of its educational facilities at the site, which includes Greeley High School. According to the complaint, the 2007 site plan approval included a fence constructed along an access driveway and placed 40 feet from plaintiff's property line.

---

[1] Consideration of those documents is also consistent with the principle that official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint may be properly considered on a motion to dismiss without converting the motion to one for a summary judgment when the authenticity of such documents is not challenged. *Moody v. State Liquor & Lottery Commission,* 2004 ME 20 ¶ 11, 843 A.2d 43.

In February 2017 SAD 51 filed an application to amend its site plan permit to incorporate a new Performing Arts Center. Under § 229-7(C)(3) of the Cumberland Site Plan Ordinance, Mad Gold, as an abutting property owner, was required to receive written notice of the hearing at which the application was to be considered. Mad Gold does not contend that it did not receive such notice.

SAD 51's application included a traffic study which noted the existence of the fence, stating that it "interferes with the sight distance of vehicles leaving the high school." It added that SAD 51 "has requested that the fence be moved farther to the south" to improve sight lines. Gorrill Palmer Study annexed as Attachment A to SAD 51 Motion to Dismiss, at p. 5.

In addition, the preliminary site plan layout submitted with SAD 51's application contained a notation that "existing vinyl fence to be removed and relocated to property line," with arrows designating the existing fence line and the proposed new fence line two feet from Mad Gold's property line. Attachment B to SAD 51 Motion to Dismiss. The final submitted plan showed the new fence line two feet from Mad Gold's property line, although it did not contain any notation identifying that the existing fence was being moved. Attachment C to SAD 51 Motion to Dismiss.[2]

Mad Gold does not dispute that it did not participate at the Planning Board hearing on June 20, 2017 at which the Planning Board approved SAD's application for amendments to its site plan. It did not file the complaint in this action within 30 days after the June 20 approval. However, in its motion for an extension of time, Mad Gold's is seeking an extension until August 18, 2017, based on certain email communications by Town officials.

---

[2] Mad Gold contends the fence was part of the buffering provided in the original 2007 site plan and that when the Planning Board approved the site plan amendment on June 20, 2017, its minutes and final decision state that there was no change proposed to the buffering and landscape. If so, this is inconsistent to what SAD 51 had proposed in its application and with the approved site plan map – although the latter showed but did not flag the proposed change. To the extent that the fence was part of the buffering, SAD was not proposing to remove the fence entirely but it was proposing to move its location.

3

Specifically, in response to a July 10 email from SAD 51 relating to the relocation of the fence and a reply from Mad Gold objecting to that relocation, the Town Planner initially emailed back to Mad Gold on July 11 at 9:19 am that MSAD had received site plan approval on June 20, and "the relocation of the fence to 2' from your shared property line is part of that approval." Email attachment D to SAD 51's Reply memo.

However, the record also includes an email sent at 12:15 pm on July 11 from the Town Planner to SAD 51, with a copy to Mad Gold, stating that the relocation of the fence could not be approved as a de minimis change as it was not shown on the recently approved site plan and instructing SAD 51 not to remove the fence until the issue had been heard by the Planning Board. Exhibit A to December 21, 2017 letter from counsel for Mad Gold. There is no explanation in the record for this change in position.

SAD responded late on July 11 that it had taken down the fence before the 12:15pm July 11 email had been received and expressed its confusion over the unexplained change in the Town Manager's position. *See* SAD 51 email sent July 11 at 5:47pm included in Exhibit D to December 21, 2017 letter from counsel for Mad Gold. In a subsequent email to Mad Gold on July 12 the Town Planner stated that the fence should be reinstalled. Email attached as Exhibit B to December 21, 2017 letter from counsel for Mad Gold. Eight days later in an email to SAD 51 and Mad Gold on July 20, the Town Planner expressed the opinion that the 2007 site plan approval had called for the fence as a buffer and that the final site plan map for the June 20 amendment did not "clearly" note the relocation of the fence. Email attached as Exhibit C to December 21, 2017 letter from counsel for Mad Gold.

Finally on July 20, 2017 the Town Manager emailed both parties and the Town Planner that he believed that the Planning Board had approved the project with the new fence line location, that he agreed with SAD 51's engineer that the original fence created a problem with the sight line at the entrance to the street, and that he was not aware of any provision that would allow the Town to require an applicant to return to the Planning Board for a "do over." Email attachment B to SAD 51's Reply memo.

4

<u>Timeliness of Appeal</u>

Mad Gold acknowledges that its appeal from the Planning Board's June 20 approval would ordinarily be subject to the 30-day deadline set forth in Rule 80B(b).[3] Although it did not file this action until August 18, it argues that the "flagrant miscarriage of justice" or "good cause" exception set forth in *Viles v. Town of Embden,* 2006 ME 107 ¶¶ 7-18, 905 A.2d 298, and *Brackett v. Town of Rangeley*, 2003 ME 109 ¶ 14, 831 A.2d 422, are applicable in this case. *See* Plaintiff's Motion for Extension to File Rule 80B Complaint, dated August 18, 2017, at 2-4. Defendants disagree.

If the "flagrant miscarriage/good cause" standard were applicable here, the court might have difficulty in finding that this appeal meets that standard. Lack of notice is a "key factor" in meeting that standard. *Viles,* 2006 ME 107 ¶ 13. Mad Gold does not dispute that it received notice of the hearing on SAD 51's application, although it argues that it was thereafter entitled to rely on the Town Planner's emails (after she changed her initial position) until receiving the Town Manager's July 20 email. The other factors to be considered under the "flagrant miscarriage/good cause" exception are how long the appellant waited after it had actual knowledge of the decision it seeks to appeal, whether the Town violated its own ordinance and whether the applicant or permit holder violated the terms of the approval or permit. *See Viles,* 2006 ME 107 ¶ 13. In this case Mad Gold did not appeal as soon as it received the Town Manager's email but it did not wait an inordinate time. There is no colorable argument in this case that the Town violated its own ordinance. Finally, unlike the clear permit violation in *Brackett,* the issue in this case is whether the administrative record was clear as to whether or not a relocation of the fence for public safety reasons had been approved.

---

[3] Under 30-A § 4353(1) direct appeals to the Superior Court are permissible if provided for in the town zoning ordinance. Section 229-14 of the Cumberland Site Plan Ordinance provides for appeals to the Superior Court.

However, the parties' arguments relating to the "flagrant miscarriage/good cause" appear to miss the point. The "flagrant miscarriage/good cause" cases all involve whether parties should be allowed to take belated appeals to a municipal board of zoning appeals. This case involves the 30-day deadline set by Rule 80B(b) for appeals to the Superior Court, and that rule expressly contemplates that the deadline can be extended for excusable neglect pursuant to Rule 6(b). Under the circumstances of this case, the differing positions taken by town officials constitute an excusable basis for Mad Gold's neglect to appeal within 30 days, and the court therefore grants Mad Gold's motion for an extension to August 18 pursuant to Rule 6(b).

It should also be noted that a failure to appeal with a 30-day deadline deprives the court of subject matter jurisdiction when a statutory deadline is at issue. *Davric Maine Corp. v. Bangor Historic Track, Inc.,* 2000 ME 102 ¶ 11 ("statutory limitations on appeal periods are jurisdictional"). This case does not involve a statutory deadline but a deadline set by a Rule which specifically contemplates that it may be extended by the court.

There is now a statutory deadline set forth in 30-A M.R.S. § 4482-A(1), which provides that a party may appeal a final municipal land use decision to the Superior Court within 30 days. However, section 4482-A did not become effective until November 1, 2017, and Mad Gold's appeal in this case was filed on August 18, 2017.

Standing

The second threshold issue raised by Mad Gold's Rule 80B appeal is whether it has standing to pursue the merits of its appeal when it did not participate in the proceedings before the Planning Board. In *Norris Family Associates LLC v. Phippsburg,* 2005 ME 102, the Law Court stated:

> It is well established that in order to have standing to file an 80B appeal in the Superior Court, the appellant must prove (1) that it was a party to the administrative proceeding and (2) that it

6

suffered a particularized injury as a result of the agency's decision.

2005 ME 102 ¶ 11, citing *Lewis v. Town of Rockport,* 2005 ME 44 ¶ 8, 870 A.2d 107. Both participation in the proceedings below and particularized injury must be shown. *See Norris Family Associates,* 2005 ME 102 ¶¶ 16-18.

Mad Gold argues with some force that the participation requirement only applies to judicial review of decisions by municipal boards of appeals, arguing that the "party" requirement is derived from 30-A M.R.S § 2691(3)(G), which specifies that any "party" to an appeals board decision may take an appeal. However, the above statement of the Law Court in the *Norris Family* decision does not suggest that Rule 80B standing depends on the statutory language in 30-A M.R.S. § 2691. The Court instead referred to standing as a "jurisprudential principle," as opposed to an issue of statutory construction. 2005 ME 102 ¶ 13.

Moreover, the requirement that a party must have participated in the hearing below in order to have standing to appeal has been previously applied by the Law Court in at least one appeal from a Planning Board decision. *Lucarelli v. City of South Portland,* 1998 ME 239 ¶ 3, 719 A.2d 534. This requirement is also consistent with the well-settled rule that issues not raised at the administrative hearing cannot be raised on appeal. *E.g., New England Whitewater Center v. Department of Inland Fisheries and Wildlife,* 550 A.2d 56, 58 (Me. 1988). This rule would be meaningless if appellants could bypass the hearing and still raise all their complaints in court proceedings under Rule 80B.

The requirement that an appellant must have been a party to the proceedings before a planning board in order to pursue a Rule 80B appeal is also consistent with 30-A M.R.S. § 4482-A(1), effective November 1, 2017, which now specifies that a "party" may bring an appeal. Accordingly, section 4482-A(1) is now congruent with section 2691. The court concluded above that the 30-day deadline in section 4482-A(1) was a change in the law because the deadline had not previously been embodied in a statute. However, given the

7

Law Court's statements in *Norris Family* and *Lucarelli,* it appears that in limiting appeals to "parties," section 4482-A(1) is codifying rather than changing existing law.

Accordingly, the court concludes that Mad Gold cannot pursue an appeal under Rule 80B because it did not participate in the hearing before a Planning Board.

Mad Gold's Remaining Claims

In addition to its Rule 80B claim, Mad Gold has also asserted what it characterizes as a "challenge to the Town's Determination Regarding the Scope of the June 20 Permit Amendment" (Count I of Mad Gold's complaint), a request for a declaratory judgment challenging the Town's Determination Regarding the Scope of the June 20 Permit Amendment (Count II), and a request for a declaratory judgment as to the scope of the Town Manager's authority to interpret the land use ordinance and permitting decisions (Count IV).

All of these counts are transparent attempts to circumvent the barriers that exist to allowing Mad Gold to pursue Rule 80B review. None states a cognizable claim on which relief may be granted.

All of these purported causes of action seek to review Town Manager's July 20 email expressing the view that the June 20 decision by the Planning Board authorized the relocation of the fence. However, the Town Manager's statement as to whether or not the Planning Board had approved the relocation of the fence is simply his opinion. It is not a quasi-judicial action that can be reviewed under Rule 80B.

The Town Manager's email only matters to the extent that the Town Manager can be seen as declining to take action to order SAD 51 to remove the fence. However, a municipal official's decision declining to take enforcement action is an exercise of prosecutorial discretion that is not reviewable. *See Herrle v. Town of Waterboro,* 2001 ME 1 ¶10, 763 A.2d

1159.[4] Finally, although counts II and IV of Mad Gold's complaints are couched as requests for declaratory relief, the Law Court has held that a declaratory judgment action cannot be used as a mechanism to pursue claims that are not justiciable or seek Rule 80B review in another guise because relief under Rule 80B is not available. *Sold Inc. v. Town of Gorham*, 2005 ME 24 ¶ 10, 868 A.2d 172.

Mad Gold cites *Fisher v. Dame*, 433 A.2d 366, 371-72 (Me. 1981), for the proposition that the equitable remedy of declaratory relief may be available where there is no adequate remedy at law because the existing avenue of judicial review is inadequate to prevent irreparable harm. It notes that the *Fisher v. Dame* opinion states that this may apply in a case where there is a "complex course of executive and legislative conduct by municipal officials" which cannot be remedied through an appeal of the Planning Board. 433 A.2d at 374, citing *Walsh v. Brewer*, 315 A.2d 200 (Me. 1974).

The short answer to this argument is that, if Mad Gold had participated in the proceedings before the Planning Board, it would have had an adequate remedy at law.[5] Moreover, this case does not remotely compare to the "complex course of executive and legislative conduct" at issue in *Walsh v. Brewer*, 315 A.2d 200.

The entry shall be:

    1. The motion by plaintiff Mad Gold LLC for an extension of time in which to file its Rule 80B complaint is granted. However, Mad Gold's Rule 80B claim is dismissed because Mad Gold did not participate in the Planning Board proceeding from which it is attempting to appeal.

    2. The motion by defendants Town of Cumberland and SAD 51 to dismiss the remaining claims in the complaint is granted.

---

[4] In *Salisbury v. Town of Bar Harbor*, 2002 ME 13 ¶¶ 10-11, 788 A.2d 598, the Law Court described *Herrle* as holding that courts lack jurisdiction over the exercise of prosecutorial discretion by municipalities on "whether *or not* to undertake enforcement action" (italics in original).

[5] Mad Gold essentially concedes in a footnote that the dispositive issue in this case is whether the June 20 Planning Board approval "did, or did not, authorize the relocation of the fence." *See* Plaintiff's Opposition to SAD 51 Motion to Dismiss, dated October 10, 2017 at 3 n.2.

3. Mad Gold's motion to specify the future course of proceedings is denied as moot.

4. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: February _2_, 2018

Thomas D. Warren
Justice, Superior Court