MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2024 ME 75
Docket:        Yor-23-424
Argued:        June 5, 2024
Decided:       October 22, 2024

Panel:         STANFILL, C.J., and MEAD, HORTON, CONNORS, and LAWRENCE, JJ.

ROGER K. MOREAU

v.

TOWN OF PARSONSFIELD et al.

HORTON, J.

[¶1] Michael J. Nelligan appeals from a Superior Court (York County, *Mulhern, J.*) judgment upholding the Town of Parsonsfield Planning Board's approval of a permit authorizing Roger K. Moreau to operate an automotive repair shop on a lot abutting property owned by Nelligan. On Moreau's appeal brought pursuant to M.R. Civ. P. 80B, the court vacated a decision of the Town Zoning Board of Appeals (ZBA) setting aside the Planning Board's approval of Moreau's permit. We agree with Nelligan that the Planning Board erred in approving Moreau's permit because the access road that links Moreau's lot to a public road does not conform to the requirements of the Town's Land Use and Development Ordinance for a private access road that serves a business. We

therefore vacate the Superior Court's judgment and direct the entry of a judgment in favor of Nelligan and the Town of Parsonsfield.

## I. BACKGROUND

[¶2]  The following facts are drawn from the administrative record and the court's findings, which are supported by the record.  *See Fair Elections Portland, Inc. v. City of Portland*, 2021 ME 32, ¶ 11, 252 A.3d 504; *Raposa v. Town of York*, 2020 ME 72, ¶ 2, 234 A.3d 206.

[¶3]  Moreau owns a lot on Reed Lane in the Town of Parsonsfield.  The lot was created through the division of a larger parcel and has no frontage on any public road or street.  Reed Lane is a private road off Maplewood Road, which is a public road.  The parties agree that Reed Lane dates to 1991 and serves multiple residences, including the one owned by Moreau.  Reed Lane has a right-of-way that is fifty feet wide but contains a constructed gravel road that is only fifteen feet wide.  Moreau owns the fee interest in the right-of-way and in a lot on Maplewood Road that lies between Maplewood Road and Moreau's Reed Lane lot.  Since sometime between 2015 and 2018, Moreau has operated an automotive repair business in a garage on the Reed Lane lot without a required permit.  Nelligan, who owns property on Maplewood Road that abuts Moreau's Reed Lane lot, opposes Moreau's use of the lot to operate his business.

[¶4] Moreau's Reed Lane lot is in the Town's Village Residential District, defined in the Town's Land Use and Development Ordinance as being established "to provide for residential growth and commercial uses appropriate for a village area." Parsonsfield, Me., Land Use and Development Ordinance art. II, § 1(B) (Sept. 8, 2018). In keeping with this purpose, the ordinance permits specified "commercial" uses on property in the Village Residential District, including "Auto, Rec. Vehicle, Small Engine Repair Shop." *See id.* § 4. To operate such a repair shop in the Village Residential District, an applicant must obtain a site plan review permit from the Town's Planning Board. *Id.* art. II, § 4 tbl. 1, art. III, § 2. The Planning Board may grant such a permit only if the applicant satisfies seventeen site review criteria listed in the ordinance.[1] *Id.* art. III, § 6.

## A. Moreau's First Two Applications

[¶5] On June 26, 2019, Moreau submitted to the Planning Board an application for a site plan review, seeking after-the-fact approval of the

---

[1] The seventeen criteria are titled: "Aesthetic, Cultural and Natural values"; "Conformity with Ordinances and Plans"; "Erosion"; "Financial Burden on Town"; "Financial and Technical Ability"; "Flood Areas"; "Freshwater Wetlands"; "Groundwater"; "Municipal Solid Waste Disposal"; "Municipal/Public Water Supply"; "Neighborhood Compatibility"; "Pollution"; "River, Stream or Brook"; "Sewage Disposal"; "Storm Water"; "Sufficient Water"; and "Traffic." Parsonsfield, Me., Land Use and Development Ordinance art. III, § 6 (Sept. 8, 2018).

automotive repair shop.  On January 13, 2020, the Planning Board denied Moreau's application.

[¶6]  After acquiring the Maplewood Road lot that lies between Maplewood Road and the Reed Lane lot, Moreau submitted a second, amended application and contended that his acquisition of the Maplewood Road lot meant that his Reed Lane lot had frontage on Maplewood Road and hence conformed with the ordinance.  The Planning Board unanimously approved the application on September 15, 2020.  On October 15, 2020, Nelligan appealed the approval to the ZBA.

[¶7]  In January 2021, the ZBA vacated the Planning Board's decision, concluding that the Reed Lane lot remained nonconforming because it did not acquire public road frontage through Moreau's acquisition of his Maplewood Road lot.  Moreau did not appeal the ZBA's decision.

## B.    Moreau's Third Application

[¶8]  On February 22, 2021, Moreau submitted to the Planning Board a third application for site plan review for approval of the automotive repair shop at the existing garage with access via a fifty-foot-wide right-of-way over Reed Lane.  While the application was pending, he amended it to clarify that the garage had one bay and would be accompanied by a separate parking area with

five parking spaces. On July 27, 2021, the Planning Board granted Moreau a permit, and on August 19, 2021, Nelligan appealed the decision to the ZBA on multiple grounds, including that for Moreau to use the lot for commercial purposes, he had to have access to the property via a sixty-foot-wide right-of-way that complied with the ordinance's commercial road standards. Meanwhile, after learning that the existing garage was closer to a well than the ordinance permitted, Moreau built a two-bay garage for his business in a different location on the Reed Lane lot.

[¶9] After taking up Nelligan's appeal, the ZBA issued a decision on October 4, 2021, stating that it voted unanimously to "send the matter back to the Planning Board for further findings" because Moreau needed to update the site plan to reflect his new two-bay garage, and the Planning Board needed "to further review the Ordinances to determine if the 50' right-of-way is sufficient or if [a] 60' right-of-way is needed for a new commercial use in the [Village Residential District]." Nelligan appealed the decision to the Superior Court, but on February 9, 2022, the Superior Court (*Douglas, J.*) dismissed the appeal, concluding that Nelligan had failed to exhaust his administrative remedies.

[¶10] On February 14, 2022, Moreau submitted to the Planning Board a revised site plan depicting the two-bay garage, with an updated survey plan

depicting a total of ten parking spaces. On March 23, 2022, the Planning Board reviewed the ZBA's October 2021 decision and approved Moreau's revised site plan by a vote of three to zero. The Planning Board found that the existing fifty-foot right-of-way was sufficient notwithstanding Moreau's commercial use and that the ordinance's road standards applied to new roads within subdivisions, not to existing private ways such as Reed Lane. The Planning Board's written decision contained no additional findings and said that the Planning Board stood by its July 27, 2021, decision.

[¶11] On April 14, 2022, Nelligan appealed the Planning Board's March 2022 decision to the ZBA, and on June 23, 2022, and July 28, 2022, the ZBA held meetings on the appeal. Nelligan raised numerous objections to the Planning Board's approval of Moreau's third application, as amended. At its meeting on June 23, 2022, the ZBA voted to vacate the Planning Board's decision as to one of the issues raised by Nelligan: the necessary width of Reed Lane. The meeting adjourned before the ZBA had addressed Nelligan's remaining issues and was "rescheduled" to July 28. At the July 28 meeting, the ZBA voted, by a vote of three to zero, to vacate the Planning Board's approval of Moreau's site plan review permit for three reasons, including that, because Moreau proposed a commercial use on his lot, the fifty-foot-wide Reed Lane right-of-way was

insufficient, and Moreau needed access to his Reed Lane lot via a sixty-foot-wide right-of-way to comply with the ordinance's commercial road standards.  The ZBA's other reasons are not at issue in this appeal.[2]

[¶12]  In its July 28, 2022, decision, the ZBA indicated that it would not reach Nelligan's other objections because they were "in the nature of enforcement issues, and therefore beyond the scope of the Appeal."  On August 2, 2022, Moreau submitted a request for reconsideration, and on August 5, 2022, the ZBA denied it.

---

[2]  A second reason given in the ZBA's decision vacating the Planning Board's decision was that because "[t]he general structure of the [ordinance] prohibits a second principal use of any lot," Moreau could not use his lot for both an existing single-family residence and an automotive repair shop.  (Emphasis omitted.)  Because the court did not address the issue and none of the parties raises it on appeal, we treat the issue as undeveloped and do not address it further.  *See Holland v. Sebunya*, 2000 ME 160, ¶ 9 n.6, 759 A.2d 205 ("The failure to mention an issue in the brief or at argument is construed as either an abandonment or a failure to preserve that issue."); *Mehlhorn v. Derby,* 2006 ME 110, ¶ 11, 905 A.2d 290 (declining to address an issue with respect to which the appellants "neither supplied argument nor suggested a rationale in support of their position").

The third reason given by the ZBA was that the ordinance limits to a single permitted use rear lots accessed by private rights-of-way that do not meet the width requirements of the ordinance, and Moreau could not add a new commercial use to the lot's existing residential use.  The reference is to an ordinance provision that confers limited grandfathering on rear lots that are served by nonconforming access roads:

> A rear lot (lacks frontage) that meets size requirements but is accessible only by a right-of-way that does not meet the width requirements may be used for a single dwelling or other single permitted use provided that the right-of-way existed at the effective date of this Ordinance or amendment, and that a wider right-of-way cannot be negotiated with abutting landowners, and that all other relevant provisions of this Ordinance can be met.

Land Use and Development Ordinance art. I, § 6(D)(3).  The court determined that the provision did not apply because Moreau's lot meets the width requirement for access roads serving residences.  None of the parties argues that the provision affects the outcome of this appeal, and we need not discuss it further.

[¶13]  On August 11, 2022, Moreau filed a Rule 80B complaint with the Superior Court, *see* M.R. Civ. P. 80B, naming the Town and Nelligan as defendants and requesting that the court vacate the ZBA's decision and reinstate the Planning Board's approval.  With his complaint, Moreau filed a motion for enlargement of the Rule 80B deadline for filing the appeal.  *See* M.R. Civ. P. 80B(b).  Nelligan opposed Moreau's motion for enlargement of time.

[¶14]  The court (*Mulhern, J.*) granted Moreau's motion for enlargement of time.  The court found that Moreau's appeal was untimely but that Moreau established good cause by showing that the ZBA had not completed its deliberations until July 28, 2022.  Additionally, the court noted that the ZBA had acknowledged in its August 5, 2022, letter denying Moreau's motion for reconsideration that the motion was timely.

[¶15]  Moreau filed a request that the Rule 80B appeal record include material from his first two applications as well as from his third application.  Nelligan opposed Moreau's request, stating that the record should include only what the Planning Board considered when it made its decision on the third application.  The court granted Moreau's request.

[¶16]  The court reviewed the March 23, 2022, Planning Board decision (which adopted the Planning Board's prior July 2021 decision) and vacated the

ZBA's decision. The court concluded that the fifty-foot-wide Reed Lane right-of-way complied with the ordinance because the ordinance's road standards did not apply to Reed Lane, and that Moreau's proposed use conformed to the ordinance. Responding to Nelligan's argument that the Planning Board failed to make findings sufficient to support its decision, the court acknowledged that the Planning Board's "summary determination is insufficient" but concluded that it could infer from the record "the subsidiary facts supporting the Board's conclusion that Moreau's project complied" with the ordinance.

[¶17] The court entered a judgment vacating the ZBA's decision. Nelligan timely appealed. *See* M.R. App. P. 2B(c)(1); 14 M.R.S. § 1851 (2024).

## II. DISCUSSION

[¶18] Nelligan argues that Moreau's Rule 80B complaint was untimely filed, that Moreau's proposed use does not conform to the ordinance for several reasons, and that the Planning Board did not make findings adequate for judicial review.[3] The Town joins in Nelligan's procedural arguments and his arguments that Moreau's proposed use does not conform to the ordinance. We

---

[3] Nelligan also argues that the Superior Court should not have considered Moreau's first two applications for site plan review as part of the Rule 80B record, but because we agree with Nelligan that Moreau should not have been granted a permit for his automotive repair shop regardless, we need not address that argument. *Cf. Brooks v. Town of Bar Harbor*, 2024 ME 21, ¶ 9, 314 A.3d 205.

first address the timeliness of Moreau's Rule 80B appeal and then turn to the substantive issues regarding whether Moreau was entitled to the site plan review permit under the ordinance.

## A. Timeliness of Moreau's Rule 80B Complaint

[¶19] Under Rule 80B and the statute setting the deadline for appeals from decisions of municipal boards of appeals, Moreau's Rule 80B complaint had to be filed within forty-five days of the ZBA's vote on its decision. M.R. Civ. P. 80B(b) ("The time within which review may be sought shall be as provided by statute . . . ."); 30-A M.R.S. § 2691(3)(G) (2024) ("Any party may take an appeal[] within 45 days of the date of the vote on the original decision . . . ."). Moreover, the municipal appeals statute provides: "Notice of any decision must be mailed or hand delivered to the petitioner, the petitioner's representative or agent, the planning board, agency or office and the municipal officers within 7 days of the board's decision." 30-A M.R.S. § 2691(3)(E). The forty-five-day deadline explicitly runs from the date of the ZBA vote that decides an appeal rather than from the date of the written notice of the decision.

[¶20] Moreau filed his Rule 80B complaint on August 11, 2022, within forty-five days of the ZBA's July 28, 2022, meeting but more than forty-five days after the ZBA's June 23, 2022, meeting. If the ZBA's "vote on the original

decision" occurred at the earlier meeting, Moreau's Rule 80B complaint was untimely filed.  30-A M.R.S. § 2691(3)(G).

[¶21]  In *Beckford v. Town of Clifton*, we interpreted section 2691 to provide that the appeal period from a ZBA decision begins to run from the ZBA vote on all issues raised in an appeal.  2014 ME 156, ¶¶ 17-23, 107 A.3d 1124.  In *Beckford*, the board of appeals at its meeting on January 25, 2012, voted to deny the Beckfords' appeal "in its entirety" and scheduled a meeting for January 30, 2012, "for the Final Decision."  *Id.* ¶ 3 (quotation marks omitted).  On January 30, 2012, the board of appeals adopted and issued a written decision that reflected its prior vote.  *Id.* ¶ 4.  The Beckfords filed their Rule 80B complaint in the Superior Court within forty-five days after the January 30 meeting but not within forty-five days after the vote on January 25.  *Id.* ¶ 5.  Based on section 2691(3)(G), we concluded that the Beckfords' appeal was untimely.  *Id.* ¶¶ 8, 17-23.  We explained that at its earlier meeting, "the ZBA *fully disposed of all the issues raised in the Beckfords' appeal* and then, in a comprehensive and unified way, denied the appeal, leaving only the task of issuing written findings as the Ordinance required."  *Id.* ¶ 19 (emphasis added).

[¶22]  Several points distinguish this case from *Beckford*.  Here, the ZBA at its June 23, 2022, meeting did not "fully dispose[ ] of all of the issues raised

in [Nelligan's] appeal," *id*.[4]  Although the ZBA voted to grant Nelligan's appeal on the commercial road standards issue at the June 23, 2022, meeting, the record shows that how the ZBA would decide some of Nelligan's other issues remained unclear until the July 28, 2022, meeting.  Further, in concluding that Nelligan's remaining contentions need not be addressed because they presented "enforcement issues," the July 28, 2022, written decision differed from what was discussed and decided at the June 23, 2022, meeting, at which no such conclusion was adopted.  Finally, the ZBA's failure to issue a "[n]otice of any decision" within seven days after its June 23, 2022, meeting confirms that it did not purport to make an appealable decision at that meeting.  30-A M.R.S. § 2691(3)(E).

[¶23]  We conclude that Moreau's Rule 80B appeal was timely filed.

B.     **Whether Moreau's Commercial Use of His Lot Violates the Ordinance**

[¶24]  Nelligan and the Town argue primarily that Moreau is not entitled to a permit for the automotive repair shop because his commercial use of his lot requires his access road to comply with the commercial road standards prescribed at section 6(N) of article II of the ordinance and the fifty-foot-wide

---

[4] Because we conclude that the appeal was timely, we need not address whether Moreau had good cause to file his Rule 80B complaint when he did.  *Cf. Brooks*, 2024 ME 21, ¶¶ 7-9, 314 A.3d 205.

Reed Lane right-of-way does not comply with the sixty-foot-width requirement in the standards. In addition, they argue that the Planning Board's decision must be vacated in any event because the Planning Board failed to make findings sufficient to explain and support its ruling. Moreau responds that the ordinance's road standards, Land Use and Development Ordinance art. II, § 6(N), do not apply to private access roads like Reed Lane and that, even if the commercial road standards did apply to such roads, his lot would be grandfathered and need not comply. As to the Planning Board's findings, Moreau urges us to affirm the court's judgment upholding the Planning Board's decision on the basis of inferred findings.

### 1. Standard of Review

[¶25] "In a Rule 80B appeal, the Superior Court acts in an appellate capacity, and, therefore, we review the agency's decision directly." *21 Seabran, LLC v. Town of Naples*, 2017 ME 3, ¶ 9, 153 A.3d 113 (quotation marks omitted). The administrative decision on review here is that of the Planning Board because the Parsonsfield Zoning Board of Appeals "acts only in an appellate capacity in this context," *Odiorne Lane Solar, LLC v. Town of Eliot*, 2023 ME 67, ¶ 4, 304 A.3d 253; *see Mills v. Town of Eliot*, 2008 ME 134, ¶¶ 13-16, 955

A.2d 258; *Bryant v. Town of Wiscasset*, 2017 ME 234, ¶ 11, 176 A.3d 176; Land Use and Development Ordinance art. VI, § 2(A)(1).

[¶26]  "On review of the action of a municipal planning board, we may not make factual findings independent of those explicitly or implicitly found by the municipal authority, nor may we substitute our judgment for that of the municipal authority."  *Brown v. Town of Kennebunkport*, 565 A.2d 324, 327 (Me. 1989).

[¶27]  On questions of law our review is de novo, but we "accord substantial deference to the Planning Board's characterizations and fact-findings as to what meets ordinance standards."  *Bryant*, 2017 ME 234, ¶ 12, 176 A.3d 176 (quotation marks omitted).  When we interpret an ordinance, we "look first to the plain meaning of its language, and if the meaning of the ordinance is clear," we do not go beyond it.  *21 Seabran, LLC*, 2017 ME 3, ¶ 12, 153 A.3d 113.  If a term is defined in an ordinance, we will not redefine it. *Id.*  "In construing the language of an ordinance, the ordinance is to be considered as a whole."  *Jade Realty Corp. v. Town of Eliot*, 2008 ME 80, ¶ 9, 946 A.2d 408.

## 2. The Status of Moreau's Lot Under the Nonconformity and Rear-Lot Provisions of the Ordinance

[¶28] Moreau's lot and Reed Lane predate the adoption of the current ordinance, which is stated to be March 5, 1994. Land Use and Development Ordinance art. I, § 7. The ordinance repealed the prior zoning ordinance dating to 1987.[5] *See id.* The ordinance extends grandfather status to lots, uses, and structures "legally existing at the time of adoption or amendment of this Ordinance" by permitting them to continue or remain. *Id.* § 6(A)(1). However, the ordinance states, "Except as hereinafter specified, no building, structure or land shall hereafter be used or occupied, and no building or structure or part thereof shall hereafter be erected, constructed, expanded, moved, or altered except in conformity with all of the regulations herein specified for the district in which it is located, unless a variance is granted." *Id.* § 5. Both the lot and Reed Lane appear to be grandfathered for residential use, although the lot also meets the ordinance's dimensional requirements for new lots, *see id.* art. II, § 5 tbl. 2, and Reed Lane currently complies with the requirements of the ordinance for access roads serving residential lots, *see id.* § 6(A)(2)-(3) (requiring

---

[5] The parties agree that the version of the ordinance that applies to their dispute is the most recent version, amended on September 8, 2018.

16

fifty-foot-wide access roads to residential lots).[6]  On the other hand, because Moreau's commercial use of the lot does not predate the ordinance, it is not grandfathered.[7]  *See Town of Orono v. LaPointe*, 1997 ME 185, ¶ 13, 698 A.2d 1059 (explaining that for a use "[t]o qualify for nonconforming or grandfathered status, it must be shown that the use existed prior to the enactment of the zoning provisions [regulating] it and that the use was actual and substantial." (quotation marks omitted)).  Nothing in the ordinance exempts Moreau's commercial use of the lot from full compliance with the ordinance, including any new access requirements that apply as a result of the new commercial use.

[¶29]  Because Moreau's Reed Lane lot lacks frontage on a public road, the ordinance classifies it as a "rear lot."  *See* Land Use and Development Ordinance art. I, § 6(E) (providing that any lot accessed by means of a private

---

[6]  Nelligan contends that Reed Lane is not grandfathered because it was not created until "after zoning was adopted," but the ordinance extends grandfather status to lots and uses "legally existing" before the ordinance itself was adopted.  *See* Land Use and Development Ordinance art. I, § 6(A)(1). Whether Reed Lane was "legally existing" under the terms of the 1987 zoning ordinance is unclear, but the question is moot as to the residential use of Moreau's lot because Reed Lane is currently compliant with the standards for private access roads to lots with residential uses.

[7]  "The test for determining whether a proposed property use fits within a grandfathered nonconforming use is: (1) whether the use reflects the 'nature and purpose' of the use prevailing when the zoning legislation took effect; (2) whether there is created a use different in quality or character, as well as in degree, from the original use, or (3) whether the current use is different in kind in its effect on the neighborhood."  *Total Quality, Inc. v. Town of Scarborough*, 588 A.2d 283, 284-85 (Me. 1991) (quoting *Keith v. Saco River Corridor Comm'n,* 464 A.2d 150, 155 (Me. 1983)).

road "will be classified as a rear lot unless the access road becomes a public road").[8]

### 3. The Applicability of the Ordinance's Commercial Road Standards

[¶30] Our analysis turns to the Town's and Nelligan's contention that the commercial road standards contained in section 6(N) of article II of the ordinance apply to Reed Lane because Moreau seeks after-the-fact approval for a commercial use and structure on his lot. Whether the commercial road standards apply is dispositive—they require a right-of-way at least sixty feet wide, but Moreau's right-of-way is only fifty feet wide. *See* Land Use and Development Ordinance art. II, § 6(N) tbl. 5.

[¶31] Moreau responds by noting that section 6(N) states that it "applies to the construction and/or acceptance of new Town roads, streets, ways and/or the reconstruction or major alteration thereof." Land Use and Development Ordinance art. II, § 6(N)(2). He contends that the standards for private access roads such as Reed Lane appear at article II, section 6(A) of the Ordinance. This section allows a building permit to issue for a lot lacking public road frontage

---

[8] The ordinance's definition of "road" as being "[a]n existing state, county, or town way or a street dedicated for public use," Land Use and Development Ordinance Appendix A, *Road*, along with the ordinance's description of rear lots as being those lots "without the required road frontage," *id.* art. I, § 6(E), confirm that Moreau's lot is a rear lot because it lacks frontage on a public road.

only if it has an access road "with a minimum width of fifty (50) feet within a deeded right-of-way," *id.* § 6(A), which is a standard that Reed Lane meets.

[¶32]   Nelligan points out that section 6(A) defines road construction requirements applicable only to "dwelling units," *id.* § 6(A)(3), and does not purport to regulate access to lots that are used commercially.  He also contends that, although the section 6(N) road standards do not on their face apply to private access roads, an ordinance provision governing private access roads to rear lots brings the section 6(N) standards into the analysis:

> *If serving a business* . . . , the access road must meet the construction requirements of road construction (see Article II, Section 6, N . . . ).

*Id.* art. I, § 6(E) (emphasis added).

[¶33]   Although this provision does not specify which construction requirements a private access road must meet if it serves a business, logic dictates that the commercial use of a lot calls for the lot's access road to meet commercial road standards, not residential road standards.   A practical consideration confirms that interpretation: some commercial uses permitted in the Village Residential District—convenience stores and restaurants, for example—can involve customer vehicles and delivery trucks coming and going at levels well beyond the handling capacity of a fifteen-foot-wide gravel road,

which is all that the residential access road standards at article II, section 6(A) require.

[¶34] Moreau contends that the article I, section 6(E) standard for an access road serving a business on a rear lot does not apply because his lot was created before the ordinance went into effect. We conclude otherwise. As previously noted, the grandfathered status of his lot and Reed Lane shields them from the requirements of the ordinance only as to the residential use of the lot that predates the ordinance. Moreau's commercial use of his lot and the portion of Reed Lane between his lot and Maplewood Road is subject to the current ordinance. Just as Moreau's commercial use of the lot triggers the ordinance's site review requirements, his commercial use of Reed Lane triggers the article I, section 6(E) requirement that a private access road serving a business on a rear lot comply with the article II, section 6(N) road standards. Because the width of the Reed Lane right-of-way does not comply, Moreau's application for a site plan review permit should have been denied. *See* Land Use and Development Ordinance art. II, § 6(N) tbl. 5.

[¶35] We therefore vacate the judgment in favor of Moreau and remand for entry of judgment affirming the ZBA's decision in favor of Nelligan and the Town. This result makes it unnecessary for us to consider Nelligan's argument

regarding the inadequacy of what the court aptly characterized as the Planning Board's "summary determination" in lieu of the required detailed findings.

The entry is:

> Judgment vacated. Remanded to the Superior Court with instructions to enter a judgment affirming the decision of the Zoning Board of Appeals.

---

David P. Silk, Esq. (orally), Curtis Thaxter LLC, Portland, for appellant Michael J. Nelligan

David A. Lourie, Esq. (orally), Cape Elizabeth, for appellee Town of Parsonsfield

Jill S. Cramer, Esq. (orally), Bourque Clegg Causey & Morin, LLC, Sanford, for appellee Roger K. Moreau

York County Superior Court docket number AP-2022-35